# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | CASE NO.20-cr-00039-RAM-RM |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **ROMEO WALTERS,** | ) | |
| **Defendant.** | ) | |

### MOTION TO DISMISS COUNTS 5, 6, 7, 8, 9 OF THE INDICTMENT AND MOTION ADOPTING CODEFENDANT MOTION TO DISMISS

**COMES NOW,** Defendant, **ROMEO WALTERS**, by and through undersigned counsel, and hereby files this Motion to Motion to Dismiss and adopts codefendant's motion to dismiss for the following reasons:

1. Defendant was indicted by the United States of America grand jury and charged with conspiracy to possess an unauthorized firearms [count 5] pursuant to Title 14 of the Virgin Islands Code, section 551 and 2253(a), unauthorized possession of a firearm pursuant to title 14 of the Virgin Islands Code, section 551 [count 6], possession of a firearm with an Obliterated serial number pursuant to Title 23, Virgin Island Conde section 481(b), possession of a firearm within 1000 feet of a school zone pursuant to Title 23, Virgin Island code, section 2253(f), unlawful possession of ammunition pursuant to Title 14 Virgin Island Code Section 2256(a).

### SUMMARY OF ARGUMENT

2. The Virgin Islands firearm statutory regime [Counts 5, 6, 7, 8 & 9] Title 14 and Tile 23 of the Virgin Island Code are unconstitutional under the Second Amendment because it

imposes unchanneled discretion for licensing officials that have been found unconstitutional by the U.S. Supreme Court in *New York Rifle & Pistol Assn, Inc. v. Bruen,* 597 U.S. \_\_\_\_ (2022), 142 S.Ct. 2111, 2022 U.S. LEXIS 3055.

3.   The Virgin Islands firearm statutory regime is unconstitutional under the Second Amendment because it contains a special needs requirement that has been found unconstitutional by the U.S. Supreme Court in *Bruen*.

4.   Defendant's charges should be dismissed because the United States cannot prove "unauthorized by law," if there is no lawful manner to possess a firearm or ammunition.

## MEMORANDUM OF LAW
## POINTS AND AUTHORITIES

The Second Amendment "is the very product of an interest balancing by the people," and it "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms" for self-defense.  Heller, 554 U. S., at 635.  Pp. 15–17. Constitution can, and must, apply to circumstances beyond those the Founders specifically anticipated, even though its meaning is fixed according to the understandings of those who ratified it.  See, e.g., United States v. Jones, 565 U. S. 400, 404–405.

To determine whether a firearm regulation is consistent with the Second Amendment, Heller and McDonald point toward at least two relevant metrics: first, whether modern and historical regulations impose a comparable burden on the right of armed self-defense, and second, whether that regulatory burden is comparably justified.  Because "individual self-defense is 'the central component' of the Second Amendment right," these two metrics are " ' central' " considerations  when engaging in an analogical inquiry.  McDonald, 561 U. S., at 767 (quoting Heller, 554 U. S., at 599). Colonial laws provide no justification for

laws restricting the public carry of weapons that are unquestionably in common use today.

Pp. 37–42, See 554 U. S., at 627.

Virgin Island Codes states in relevant part:

> Title 14, Virgin Islands Code, Section 2253(a) states:
>
>> "Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either, actually or constructively, openly or concealed any firearm, as defined in Title 23, section 451(d) of this code, loaded or unloaded, may be arrested without a warrant, and shall be sentenced to imprisonment…"
>
> Further, Section 2256(a) states:
>
>> "Any person who is not:
>> (1) a licensed firearms or ammunition dealer; or
>> (2) officer, agent or employee of the Virgin Islands or the United States, on duty and acting within the scope of his duties; or
>> (3) holder of a valid firearms license for the same firearm gauge or caliber ammunition of the firearm indicated on such license; and (4) who possesses, sells, purchases, manufactures, advertises for sale, or uses any firearm ammunition is guilty subject to imprisonment…"

These statutes, as written, are an effective ban on the possession of firearms, in contradiction with the Second Amendment of the U.S. Constitution. Although the statutes allow those citizens with the delineated, or otherwise "authorized by law", ability to possess firearms and ammunition, the unconstitutional requirements involved in obtaining a firearms permit and a government decisions as to who may or may not prove a need to bear arms renders the statute an effective ban on the possession of firearms and ammunition for ordinary citizens. This effective ban on firearms in the insular statute is unconstitutional, as it violates the Second Amendment.

The Second Amendment protects Americans' right to keep and bear arms, including handguns, for the purpose of self-defense. Such right, and all other "fundamental" personal rights have been declared as fully applicable to federal territories. Reid v. Covert, 364 U.S.

1 (1967); Dorr v. United States, 196 U.S. 138 (1904); and Downes v. Bidwell, 182 U.S. 244, (1901). Furthermore, the framers and ratifiers of Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to the United States' system of ordered liberty. McDonald v. City of Chicago, 561 U.S. 742 (2010). It is well settled that an effective ban on the possession of firearms and ammunition is unconstitutional. D.C. v. Heller, 554 U.S. 570 (2008).

The Due Process Clause incorporates the fundamental right to bear arms under the Second Amendment and applies it against both state and local governments, as well as American territories such as the Virgin Islands. Nordyke v. King, 563 F.3d 439 (9th Cir. 2009). Furthermore, in 1954 Congress passed the Revised Organic Act of 1954, which applied large parts of the U.S. Constitution to the Virgin Islands. Specifically, this Act extends the first nine Amendments to the Constitution to the Virgin Islands, which includes the Second Amendment. 48 U.S.C. §1561. The constitutional rights of Virgin Islands' residents were supported even more in In re Brown, 439 F. 2d 47, 50 (3d Cir. 1971).

In Heller, after noting that the "Constitution was written to be understood by the voters," Justice Scalia's opinion begins by presuming that the "words and phrases" of the Second Amendment carry "their normal and ordinary . . . meaning." Id., at 576 (internal quotation marks omitted). The opinion then undertakes a careful examination of all the Amendment's key terms. It does not simply ask whether its interpretation of the text is "permissible." Id. In Parker v. D.C., 478 F. 3d 370, 401 (2007), the court held that the Second Amendment protects the right of individuals to possess firearms and that the District of Columbia's near total and discretionary ban on handguns, ammunition, as well as its requirement that firearms in the home be kept nonfunctional even when necessary for self-defense, violated the Second Amendment. See Id., at 395, 399–401.

In Yukutake v. Conners, the court used the Ninth Circuit's (the most restrictive Federal circuit court with regards to the Second Amendment) two-step inquiry: [1] "how close the challenged law comes to the core of the Second Amendment right"; and [2] "the severity of the law's burden on that right." 554 F. Supp 3d 1074, 1081 (D. Haw. 2021). Using this analysis, the court determined that the Hawaiian requirement for firearms owners to physically present their firearms for inspection and registration (one time and within five (5) days of acquiring the firearm) was a violation of the Second Amendment. Id. at 1088. The court determined that in-person inspection and registration of firearms owned by civilians was not supported in history, even when considering the 18th Century militia laws. Id. At 1087. Like the Hawaii statute, the Virgin Islands statute "places a burden on the right to acquire [and keep] handguns by requiring compliance with the in-person inspection and registration requirement in order for civilians to legally possess firearms in the first instance" and thereafter every year into perpetuity. Id. at 1087.

Title 23 of the Virgin Islands Code, Section 457(a) provides:

(a) A license issued pursuant to the provisions of sections 454 and 454a of this chapter must be in duplicate and shall provide for the following:

(1) the name, address, description, and signature of the licensee and the reason for giving the license.

(2) That the same is not transferable and shall be carried by the licensee at all times when in possession of the firearm for which it was issued.

(3) The term thereof, which shall not exceed three years but a 24–hour concealed handgun license is for a term of three years.

(4) Places where, times when, and circumstances under which the firearm may be carried;

(5) Description of the firearm authorized to be carried, showing the serial number, if any;

(6) Grounds for issuance.

(7) Grounds for revocation.

(8) Provision that the owner of the firearm shall present the firearm annually on the anniversary of the date of licensing for inspection by the U.S. Virgin Islands Police Department (V.I.P.D.).

(9) A dealer's coupon which shall be removed and retained by any person who sells or otherwise provides the licensee with any firearm contemplated in such license.

Title 23 of the Virgin Islands Code, Section 457(a)(8)'s requirement that firearm permit owners must present their firearm for yearly inspection, is clearly much more restrictive than the inspection requirement in Yukutake. In Hawaii, one is only required to undertake this registration process once for each gun. However, in the Virgin Islands, a gun owner is required to take time off every year to complete each annual registration process. Furthermore, a firearm could be stolen enroute to an inspection or even result in some altercation or a police stop, which could end in potential deadly consequences for the gun owner. See Heller v. District of Columbia, 801 F.3d 264, 277 (D.C. Cir. 2015).

Title 14, Virgin Islands Code, Section 2256(a) is constitutionally flawed, as it is effectively an outright ban on the possession of firearms, which is a clear violation of the Second Amendment. In the case at bar, although not binding, the court should look to the Ninth Circuit's two-step inquiry to show that the section 2253(a) is also unconstitutional. The requirement for firearms owners in the Virgin Islands to only use their firearm for the stated purpose on their weapons license is a severe attack on the Second Amendment.

In New York Rifle & Pistol Assn, Inc. v. Bruen, 597 U.S. ____ (2022), 142 S.Ct. 2111, 2022 U.S. LEXIS 3055 , 29 Fla. L. Weekly Fed. S. 440 (U.S. 2022) the United States Supreme Court held that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.

The Bruen Court held further that that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." Therefore, "To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation."

The Court reviewed New York's gun statute which allows "public carry licenses only when an applicant demonstrates a special need for self-defense." It concluded that that New York's statutory scheme violates the Constitution because it subjects the Constitutional Right to bear arms (Second Amendment) to the discretion of local officials.

The court held; "We know of no other constitutional right that an individual may exercise only after demonstrating to government officers some special need. That is not how the First Amendment works when it comes to unpopular speech or the free exercise of religion. It is not how the Sixth Amendment works when it comes to a defendant's right to confront the witnesses against him. And it is not how the Second Amendment works when it comes to public carry for self-defense. New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms. We therefore reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion."

Likewise, the Virgin Islands' statutory scheme violates the Constitution because it subjects the constitutional right to bear arms (Second Amendment) to the discretion of local officials.

The following sections demonstrate that the issuance of a license is under the discretion of local officials. (emphasis added)

Title 23 V.I.C. § 454 provides:

A firearm or electronic weapon may be lawfully had, possessed, borne, transported or carried in the Virgin Islands by the following persons, provided a license for such purpose has been issued by the Commissioner in accordance with the provisions of this chapter:

(1) An officer or employee of the Government of the Virgin Islands in cases where such license, in the "judgment of the Commissioner", should be issued to such officer or employee by reason of the duties of his position.

(2) An agent, messenger or other employee of a common carrier, bank or business firm, whose duties require him to protect money, valuables or other property in the discharge of his duties; And provided, That the employer of such person shall have justified to the satisfaction of the Commissioner the need for the issuance of the license.

(3) A person having a bona fide residence or place of business within the Virgin Islands, who established to the satisfaction of the Commissioner that he has good reason to fear death or great injury to his person or property, or who establishes any other proper reason for carrying a firearm, and the circumstances of the case, established by affidavit of the applicant and of at least two credible persons, demonstrate the need for such license;

(4) A person licensed to and actively engaged in the business of manufacturing, repairing or dealing in firearms in the Virgin Islands, or the agents or representatives of any such

person, having necessity to handle or use firearms in the usual or ordinary course of business;

(5) With respect to a rifle or a shotgun a person possessing a valid and current Virgin Islands hunting license.

Title 23 V.I.C. § 454-481 provides:

(a) The Commissioner shall not issue a license for firearms under section 454 of this chapter until all the circumstances and facts set forth in the application have been investigated, and the records of the Department and other available records have been examined, and unless such investigation establishes to the satisfaction of the Commissioner:

(1) the truth of such circumstances and facts;

(2) that the applicant is a resident of the Virgin Islands, including with respect to shotguns or rifles a minor not under 16 years of age, or a nonresident who holds a current and valid license to hunt in the Virgin Islands, or an alien bonded under applicable Federal and Virgin Islands statutes for employment with a person, firm, corporation or other business entity duly licensed in the Virgin Islands to carry on the business of providing security, guard, patrol and private detective services; Provided, however, That in the case of any such bonded alien the license shall be issued to the business entity by which he is employed;

(3) that the applicant is a person of good moral character.

(4) that the applicant's fingerprints have been duly taken and/or checked with the records of the Department or other appropriate sources.

(5) that a check has been conducted of all available state and federal criminal data banks and that the issuance of a license to possess a firearm in the Virgin Islands does not violate any state or federal law; and

(6) that no proper reason exists to deny such application.

The Virgin Islands has promulgated regulations for obtaining a gun license. See 23 V.I.C. § 485-481. In the "Information and Instructions" that accompany the application for a firearm, the regulations are explained. The Virgin Islands regulation is more extreme than the statute in Bruen. In the New York statute, found unconstitutional, an applicant for a gun-carry license outside the home must prove only "proper cause." To obtain a license in the Virgin Islands, the applicant (1) must fear death or great injury or establish other "proper reason"; (2) must establish to the satisfaction of the Commissioner that he has good reason (s) to fear death or great injury to his person or property; orf (3) may establish any other proper reason for carrying a firearm, with the circumstances of the applicant having been established by affidavit and the testimony of at least (2) credible persons demonstrating the need for such license.

Bruen specifically rejects the showing of "proper cause" which appears in the Virgin Islands regulation as "proper reasons." Showing fear of death or great injury is even more intrusive than the vague "proper cause" or "proper reasons."

"The Court's decision addresses only the unusual discretionary licensing regimes, known as "may-issue" regimes, that are employed by 6 States including New York. As the Court explains, New York's outlier may-issue regime is constitutionally problematic because it grants open-ended discretion to licensing officials and authorizes licenses only for those applicants who can show some special need apart from self-defense. Those features of New York's regime—the unchanneled discretion for licensing officials and the special-need requirement—in effect deny the right to carry handguns for self-defense to many "ordinary, law-abiding citizens." Ante, at 1; see also Heller, 554 U. S., at 635, 128 S. Ct. 2783, 171 L. Ed. 2d 637. N.Y. State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111 (2022)

So clearly, the Virgin Islands falls under the "may issue" category of jurisdictions found to violate the Second Amendment by the Supreme Court. Those features of New York's regime—the unchanneled discretion for licensing officials and the special-need requirement—in effect deny the right to carry handguns for self-defense to many "ordinary, law-abiding citizens. The Virgin Islands firearm statutory regime, the unchanneled discretion for licensing officials and the special-need requirement, all violate the Second Amendment. Hence, it is not possible to be "authorized by law." if Romeo Walters could not have obtained a firearm license.

The People cannot prove "unauthorized by law" if there is no lawful manner to do so. When a statutory scheme is unconstitutional, it is as if no law or regulation were enacted. United States v. Daniel, 518 F.3d 205(3rd Cir 2008). Just as the People cannot sustain their burden against Romeo Walters for unauthorized possession of a firearm, the charge of possession of ammunition must also fail.

Section 481 states in relevant part:

(b) Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either, actually or constructively, openly or concealed, any firearm, as defined in section 451(d) of this title, loaded or unloaded, with altered or obliterated identification marks, in a public place, a residential area, a vehicle or any place where persons are gathered shall be imprisoned for not less than fifteen (15) years without parole. The instant section is a complete ban against lawful possession and the fundamental right to bear arms, as guaranteed by the 2nd Amendment to the U.S Constitution. The Government cannot prove "unauthorized by law" if there is no lawful manner to do so. When a statutory scheme is unconstitutional, it is as if no law or regulation were enacted. United States v. Daniel, 518 F.3d 205(3rd Cir 2008). Just as the United States cannot sustain their burden

against Romeo Walters for unauthorized possession of a firearm, the charge of possession of ammunition must also fail

Pursuant to 14 V.I.C. § 2256 (a3) provides:

(a) Any person who is not:

(1) a licensed firearms or ammunition dealer; or

(2) officer, agent or employee of the Virgin Islands or the United States, on duty and acting within the scope of his duties; or

(3) holder of a valid firearms license for the same firearm gauge or caliber ammunition of the firearm indicated on such license; and

(4) who possesses, sells, purchases, manufactures, advertises for sale, or uses any firearm ammunition is guilty subject to imprisonment for up to seven years or a fine not more than $10,000 to both fine and imprisoned.

The requirement that one be authorized by law to possess a firearm — which relates to a well-established regulatory regime under Virgin Islands law — is in the prohibition against possession of ammunition statute itself. United States v. Fontaine, 697 F.3d 221, 232 (3d Cir. 2012).

Bruen held; "Going forward, therefore, the 43 States that employ objective shall-issue licensing regimes for carrying handguns for self-defense may continue to do so. Likewise, the 6 States including New York potentially affected by today's decision may continue to require licenses for carrying handguns for self-defense so long as those States employ objective licensing requirements like those used by the 43 shall-issue States".

A criminal court is not an appropriate forum to decide the constitutionality of the restrictive Virgin Islands firearm laws, and as such the insular firearms related counts should be dismissed.

Sections 2253(a) and 2256(a) of the Virgin Islands Code create a severe restriction on the possession of firearm and ammunition that substantially burdens Second Amendment rights. As such, the court should ask whether this restriction leaves law-abiding citizens without reasonable alternatives for obtaining firearms.

The constitutional right to bear arms in public for self-defense is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." McDonald, 561 U. S., at 780 (plurality opinion). The Second Amendment right to carry arms in public for self-defense is no different. Second Amendment protect an individual's right to carry a handgun for self-defense outside the home

In Bruer, Justice Clarence Tomas, writing the majority opinion, held: "we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." Konigsberg v. State Bar of Cal., 366 U. S. 36, 50, n. 10 (1961).

**[space left blank]**

**WHEREFORE,** Defendant, ROMEO WALTERS, respectfully prays to this Honorable Court dismiss the COUNTS 5,6,7, 8 contained in the indoctment pursuant to the "ends of justice", and the U.SD. Supreme Court holding in N.Y. State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111 (2022).

Respectfully submitted,

*S./ Lorenzo J Palomares Starbuck*

**PALOMARES-STARBUCK & ASSOCIATES**
66 W. Flagler Street, Suite 601
Miami, Florida 33130
Telephone: (305) 447-8707
Facsimile: (305) 501-2366
E-Service E-mail: palolaw2@gmail.com
Secondary E-mail: palolaw@gmail.com

By: _/s/ Lorenzo J. Palomares_
**Lorenzo J. Palomares, Esq.**
By appointment of the Court

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CM/ECF and/or e-mail on this day of filing, upon all parties of record.

By: _/s/ Lorenzo J. Palomares_
**Lorenzo J. Palomares, Esq.**
By appointment of the Court